IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| **DAVID WHITNEY MINERALS, INC.,** <br><br> Plaintiff, <br><br> vs. <br><br> **TL CROWTHER, LLC,** <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 1:05CV89DAK |

This matter is before the court on Plaintiff David Whitney Mineral's Motion for Summary Judgment and Defendant TL Crowther's Cross-Motion for Summary Judgment. The court held a hearing on the motions on February 13, 2007. At the hearing, Plaintiff was represented by Steven Gunn and David Dibble, and Defendant was represented by Ben Hathaway and Stephen Geary. The court has carefully considered the pleadings, memoranda, and other materials submitted by the parties, the arguments advanced by the parties at the hearing on the motions, and the law and facts relevant to the motion. Now being fully advised, the court enters the following Memorandum Decision and Order.

## BACKGROUND

This case arises from the tax sale of some property in Morgan County. From 1912 to 1916, Whitney Minerals' predecessors in interest acquired roughly 620 acres of fee simple land in Morgan County. The ownership of the property arose from the Snowdrift, Elsinore, Francis, Weber, and Adrian Placer mining claims. Title to the property was perfected through patents

granted by the U.S. Government dated December 19, 1912 and January 8, 1913.  These patents were recorded in the records of the Morgan County Recorder in 1916.

The 270.77 acreage total listed at the bottom of the 1913 Patent mistakenly includes Lot 4 of the Weber Claim – a lot that consists of approximately 38.77 acres.  No patent was ever issued for Lot 4 to Whitney Minerals or any of its predecessors.  United States government maps show Lot 4 of the Weber Claim as still belonging to the United States.  Therefore, Whitney Minerals does not now claim title to Lot 4 of Section 26.  Because of the mistake on the Patent and possibly due to other circumstances throughout the years, Morgan County has included Lot 4 in the assessments of the Subject Property.

Historically, Whitney Minerals has appeared to claim an interest in Lot 4.  Whitney Minerals always transferred Lot 4 through its predecessor entities.  Whitney Minerals also sold portions of Lot 4 to the State Road Commission in 1965.  An additional 11.9 acre parcel located in Lot 4 is owned by Union Pacific Railroad.  There is no evidence before the court as to how Union Pacific Railroad acquired that property.  The Morgan County Ownership Plat shows that these portions of Lot 4 are not owned by Whitney Minerals, yet they were included in the assessments of the Whitney Minerals property.

Whitney Minerals' Secretary, Jon Clark, claims that sometime in the 1990s he learned that Whitney Minerals was being taxed on Lot 4, which was also claimed by the Bureau of Land Management.  Clark stated in his deposition that he elected not to pursue an action over the disputed tax assessment because it "sounded expensive" to bring an action against "all these people over this thing."  Since about 1990 to the present, Whitney Minerals paid no property taxes on any of its property.

By 1997, when Clark resumed control of Whitney Minerals, he was aware that no

property taxes had been paid, or were being paid on Whitney Minerals' property in Morgan County.  Whitney Minerals became delinquent in its tax payments for the subject property and eligible for a tax sale in 2002.  Under Utah Code Annotated Section 59-2-1343, property is eligible for a tax sale when taxes are delinquent for five consecutive years.  Due to Morgan County's efforts to notify Whitney Minerals, however, the subject property was not put up for tax sale until the following year.

On May 15, 2003, Morgan County sent a Notice of the 2003 tax sale by certified mail to "Phosphate Industries", the previous name of Whitney Minerals, and David Whitney Minerals, Inc, at an address on Mack Avenue in Grosse Pointe Park, Michigan, but it was returned as undeliverable.  Since March 21, 2000, however, this was the address for Whitney Minerals on file with the State of Michigan and represented as such in filings with the State of Michigan.  This same address is used by Rich County, Utah for sending tax notices to Whitney Minerals for its property taxes in that county.  Those taxes are not delinquent.

Clark, however, asserts in a recent affidavit that his office was not located at the Mack Avenue address.  Plaintiff asserts that the proper contact person for Whitney Minerals was its attorney Anita McIntyre.  Although Ms. McIntyre states that she informed Morgan County of this fact, there is no written confirmation or record of the conversation.

On May 21, 2003, Clark received a late-night telephone call from an acquaintance, the wife of the Morgan County Sheriff.  She informed Clark that on May 30, 2003, there was a tax sale scheduled that involved the Whitney Minerals property.  The telephone call was the first time that Clark and Whitney Minerals had heard about the May 30, 2003 tax sale.

Clark immediately had his lawyer, Anita McIntyre, request that the Morgan County Council grant a 120-day extension in order for Whitney Minerals to clarify the taxes actually

owed and to raise the money to redeem the property.  McIntyre indicated to the County that the land had been erroneously assessed for some time.  However, rather than raise the issue regarding ownership of Lot 4, the assertion of error included in her letter was that "the property was listed as mining property when it has never been mined and there are no minerals on the property."  She stated that Whitney Minerals assumed that the improper assessment was made by the State on the assumption that this is mining property which it is not.

     After the County received this communication, it faxed a notice of the tax sale to McIntyre on May 27, 2003.  At its Council meeting on May 29, 2003, however, the Morgan County Council refused to grant Whitney Minerals an extension.  On May 30, 2003, Morgan County held a tax sale at which it attempted to sell the Whitney Minerals property to collect the alleged $40,796.49 of delinquent taxes, including at least $11,838.97 in penalties and interest.  Because of competition bidding, the successful bidder, TL Crowther, paid $55,000 for the property.

     On June 17, 2003, Morgan County issued a Tax Deed on the property to TL Crowther.  The property description on the Tax Deed contains the statement "Less Amts Sold," which statement was not included in the property description found in the assessments and in the notice of the Tax Sale.  Additionally, the Tax Deed description includes the "E1/2 SW1/4" of Section 34 instead of the "E1/2 NW1/4," the correct legal description.  Whitney Minerals' title expert acknowledged that this was an obvious typographical error.  This same error was in Whitney Minerals' own Warranty Deed and existed throughout the chain of title.

     After the tax sale, Clark made numerous telephone calls to county and state personnel to inquire about obtaining the excess funds from the sale.  Whitney Minerals completed all the necessary forms to claim and receive the $14,300 surplus, and has in fact received that money.

**DISCUSSION**

Plaintiff argues that Defendant's title is without legal effect because the tax sale on which it is based did not conform to the applicable statutory requirements and is, thus, void as a matter of law. Courts have recognized that the sale of land due to a tax delinquency is a "harsh procedure, which may work great hardship on property owners." *Fivas v. Petersen*, 300 P.2d 635, 637 (Utah 1956). For this reason, the statutory procedures for a legal tax sale "are construed in favor of the taxpayer and against the taxing authority, and are *strictissimi juris*." *Id.* "[U]nless all the necessary prerequisites of the statute are carried out, the tax sale becomes invalid. If one of the prerequisites fails, it is as fatal as if all failed." *Olsen v. Bagley*, 37 P. 739, 740 (Utah 1894).

Plaintiff argues that the following defects in the assessment and eventual sale of the Subject Property for delinquent taxes render the Tax Sale void as a matter of law: (1) the Tax Sale was based on assessments that erroneously included properties not owned by Whitney Minerals and, thus, Morgan County was demanding more money than Whitney Minerals owed; and (2) the description of the Subject Property in the Tax Deed is different from the description of the Subject Property contained in the assessments and Notice of Tax Sale.

Plaintiff relies on *Asper v. Moon*, 67 P. 409, 410 (Utah 1902) for the proposition that where real property is sold to satisfy delinquent property taxes and the amount of delinquent tax includes amounts erroneously assessed on lands not owned by the property owner, such a sale is void. In *Asper*, an owner of real property was taxed on property he actually owned and on a lot that had been previously owned by the city. *Id.* In part, the court held that because the lot was "wrongfully assessed, and the amount of such assessment was not deducted from the amount of the assessment for which the lots classified with said lot were offered for sale and sold, the sale

of said lots was void." *Id.*

Plaintiff asserts that Utah Code Annotated Section 59-2-1350 also supports its position because it places an affirmative duty on the county auditor to refrain from selling a property if evidence is uncovered that would indicate an "irregular or erroneous assessment" of the property. It states, "[I]f the county auditor discovers before the tax sale that because of an irregular or erroneous assessment any property should not be sold, the auditor may not sell the property." Plaintiff argues that the Tax Sale is void because Morgan County consistently included Lot 4 in the assessment even though it has never been owned by Whitney Minerals. The Morgan County Ownership Plat shows that since 1965 approximately 6.45 acres of Lot 4 was owned by the Road Commission and that 11.9 acres of Lot 4 is owned by the Union Pacific Railroad Company. McIntyre's May 22, 2003 letter to the County also asserted that the County's assessments were in error.

Defendant contends that title should be quieted in it because Plaintiff's acceptance of the surplus sale proceeds ratified the tax sale and waived any objections Plaintiff may have had to the sale. Defendant states that although no reported Utah case has addressed this exact point, a long line of authority from other state and federal courts recognizes the doctrine of ratification as it applies to a tax sale. In *Lawrence v. Beaman*, 1990 LEXIS 12735, *11 (D. Mass. 1990), the court stated that "in cases where the plaintiff . . . ratified the sale by subsequently accepting the excess proceeds, courts have refused to void the sale notwithstanding noncompliance by the IRS with statutory requirements. In *Behr v. Berg*, 940 P.2d 1084 (Colo. App. 1997), the former property owner accepted the surplus sale proceeds from the IRS, although only after she had been forcibly evicted in an unlawful detainer action by the new owner. *Id.* at 1086. The court held that "by cashing the check, defendants have ratified the tax sale and any irregularity in the

sales procedure is now deemed waived." *Id.* at 1087.

The principle of ratification of a tax sale extends back at least to the nineteenth century. *See Clyburn v. McLaughlin*, 17 S.W. 692 (Mo. 1891) (upholding tax sale where prior owners had accepted proceeds from the sale. "It is a well-recognized principle of the law of estoppel that 'no person will be allowed to adopt that part of a transaction which is favorable to him, and reject the rest to the injury of those from whom he derived the benefit." *Id.* at 692. The court agrees with Defendant that having consciously pursued the benefit of the tax sale in this case, Plaintiff has waived any objections it may have had to the sale.

In addition, Defendant further argues that Plaintiffs' challenge to the assessment is untimely and barred. Under most circumstances, a taxpayer only has until forty-five days after the mailing of assessments or September 15th of the current year to challenge a property tax assessment under Utah Code Annotated Section 59-2-1004(2)(a). A taxpayer may file a belated appeal if the county failed to give proper notice of the assessment or a factual error exists in the county records for the property –such as an error in the size of the parcel. Utah Admin. Code R884-24P-66. But, in no event may a taxpayer appeal an assessment after March 31st of the following year, when each county is required to make its final annual settlement. *Id.*; Utah Code Ann. § 59-2-1365(2)(b).

The subject property was sold for past due assessments that accumulated in 2002 and earlier years. The property was not sold until May 30, 2003, two months after the absolute deadline to challenge the 2002 assessment. Clark admitted that he was aware of the erroneous assessment several years earlier and consciously chose not to pursue the issue because of the perceived cost. Plaintiff cannot escape the statute of limitation by waiting until after the tax sale to challenge the assessment. Plaintiff never challenged the assessments before the County and

never appealed to the Board of Adjustments. If the action was against the County, this court could dismiss the case for failure to exhaust administrative remedies. Because Plaintiff would not have a timely action against the County for an improper assessment, it cannot have an action against the purchaser of the property at the Tax Sale. Plaintiff failed to timely challenge that assessment, and it does not resurrect the limitations period by suing to quiet title.

Furthermore, Plaintiff cannot challenge the erroneous tax deed because it had actual notice of the property being sold. Plaintiff invited the typographical error regarding the SW quarter rather than NW quarter because it made the same mistake on its Warranty Deed. "When real property is assessed or sold for taxes, the description must be such that the property can be definitely known and located. . . . It must be definite enough so the owner will know just what property is being sold." *Tintic Undine Mining co v. Ercanbrack*, 74 P.2d 1184, 1188 (Utah 1938). Plaintiff cannot dispute that it knew what property was assessed and what property was being sold. Plaintiff consciously decided not to pursue an action regarding the ownership of Lot 4. Therefore, the court concludes that Plaintiff has no action against Defendant and title to the property should remain with Defendant.

## CONCLUSION

Based on the above reasoning, Defendant's Cross-Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Summary Judgment is DENIED. This case is dismissed in its entirety, each party to bear its own fees and costs.

DATED this 28th day of February, 2007.

_____
DALE A. KIMBALL
United States District Judge